IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANK CANDELARIA,

    Plaintiff,

vs.  CIV NO. 00- 823 MV/DJS

CITY OF ALBUQUERQUE, et al.,

    Defendants.

FRANK CANDELARIA, ALVIN
CARTWRIGHT, and HALSEY S. TRUESDALE,

    Plaintiffs,

vs.  CIV NO. 01-1452 MV/DJS

CITY OF ALBUQUERQUE-BERNALILLO COUNTY
DETENTION CENTER, a City of Albuquerque
government agency, JOHN DANTIS, in his individual
and official capacity as Director of the Bernalillo County
Detention Center, CAPTAIN HENRY PEREA, in his
individual and official capacity as Captain of the
Bernalillo County Detention Center, and JACK
YARMOLA, Community Services Program Manager
in the City of Albuquerque Corrections Department,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court in this consolidated case on motions for summary judgment brought by Defendants City of Albuquerque, City of Albuquerque-Bernalillo County Detention Center, John Dantis, Henry Perea and Jack Yarmola. The first motion was filed before consolidation in Case CV 00-823 **[Doc. No. 56]**. The second motion, entitled Motion for Summary

Judgment #1, was filed before consolidation in Case CV 01-1452 **[Doc. No. 66]**. The third motion, entitled Motion for Summary Judgment #2, was also filed before consolidation in Case CV 01-1452 **[Doc. No. 69]**. In addition, Defendants City of Albuquerque-Bernalillo County Detention Center, Mr. Dantis, Mr. Yarmola and Captain Perea have filed a motion to strike certain plaintiffs' exhibits **[Doc. No. 80]**.

The Court, having considered the motions, pleadings, supporting exhibits, relevant law and being otherwise fully informed, finds that the motion will be **GRANTED in part** and **DENIED in part**. The motions for summary judgment will be granted only for the Title VII claims occurring prior to July 15, 2000. The remainder of the motions for summary judgment will be denied. The motion to strike plaintiffs' exhibits is denied as moot.

## PROCEDURAL BACKGROUND

Plaintiffs voluntarily dismissed several counts of their consolidated case. In case CV 00-823, *Candelaria v. City of Albuquerque and John Dantis*, Plaintiff voluntarily dismissed Counts II, IV, and that part of Count I that alleged discrimination in transportation assignments. Plaintiff also dismissed, without prejudice, the remaining portion of Count I in which he alleged discrimination in overtime assignments at the Satellite Facility (Satellite). All parties agree that Mr. Candelaria's claims regarding discrimination in the overtime assignments at the Satellite are adequately stated in Count I of the Complaint in CV 01-1452. Plaintiffs also have voluntarily dismissed Count V of the Complaint in CV 01-1452 and the claims against the individual defendants in Count IV in CV 01-1452.

The only surviving claim in CV 00-823 is Count III, in which Plaintiff alleges unlawful retaliation, pursuant to 42 U.S.C. §1983. In CV 01-1452, the remaining counts are Count I, alleging

sexual discrimination under Title VII against the City of Albuquerque; Count II, alleging a §1983 claim under the First and Fourteenth Amendments against Defendants Mr. Dantis, Captain Perea and Mr. Yarmola in their individual capacities; Count III, a §1983 claim under the Fourteenth Amendment against the City of Albuquerque; and Count IV, claiming the City of Albuquerque violated the New Mexico Human Rights Acts.

**FACTUAL BACKGROUND**

The three plaintiffs, Mr. Candelaria, Mr. Cartwright and Mr. Truesdale, are Correctional Officers (COs) and Transportation Officers (TO's) who have worked for the City of Albuquerque-Bernalillo County Detention Center (BCDC) for a number of years. In the past, the Plaintiffs had been able to work overtime shifts at various positions at BCDC as COs or TO's to supplement their paychecks. Overtime shifts are welcomed by many of the BCDC employees if the shifts involve one of the preferred assignments at BCDC – one with less stress or less direct contact with inmates, one primarily with paperwork, or one in a quiet or calm setting. However, if the overtime shift is in one of the more demanding assignments – for example, a floor officer on one of BCDC's main floors – most BCDC employees just as soon would not work the assignment, especially after a long, demanding day on the job.

Overtime assignments are governed by rules of seniority according to the union contract in place at BCDC. When someone is needed to work overtime, the Officer of the Day calls down the list of BCDC employees, starting with the most senior, until he or she finds a volunteer for the assignment. If there are too many overtime assignments and not enough volunteers, union rules require that the Officer of the Day begin at the bottom of the seniority list and assign jobs until they are filled.

The Plaintiffs are near the top of the seniority list. For several years, Plaintiffs were able to volunteer for the overtime assignments they preferred and supplement their paychecks regularly; but, for a variety of reasons, including increased retention among BCDC employees, offers for the overtime assignments that Plaintiffs preferred declined in recent years.

The Satellite Facility was a converted warehouse, several blocks from BCDC's main facility, used to house inmates who were assigned to work on the Albuquerque Clean Team or at a local recycling facility. The inmates were accommodated in three dorm-like sleeping areas and had access to common living areas. In 1998, the Satellite began to be used exclusively for females, lodging approximately 100 inmates at a time. Due to budget constraints, the staffing at the Satellite was reduced in 1999 to two correctional officers per shift, together with a female supervisor on the swing and graveyard shifts. Defendant Mr. Yarmola, who was the director of the Satellite, was present during the day shift. The Satellite Facility was closed on December 2, 2002 because a new jail facility had become operable.

Mr. Yarmola had various concerns about placing male correctional officers at the Satellite after BCDC started using it as a female-only housing facility, and made his reservations known several times during the regular weekly meeting for the BCDC captains. His hesitation stemmed from the possibility of direct, unsupervised contact between male COs and female inmates because of the physical layout of the facility and false accusations of improper male CO behavior that might be brought by the female inmates. Mr. Yarmola drafted a memorandum outlining these issues and requested that the Satellite be staffed solely with female COs. Major Cook, to whom the memo was addressed, does not remember directing Mr. Yarmola to draft the memo but does remember the concerns expressed by Mr. Yarmola.

Although exactly how the decision was made, or even by whom it was made, remains in dispute, the request to use only female COs at the Satellite ultimately was adopted. Captain Perea signed the memo and directed the Officer of the Day to assign only female COs to the Satellite, unless there was an emergency in staffing. The decision went into effect in late September 1999.

Plaintiffs Mr. Candelaria and Mr. Cartwright began asking for overtime assignments for the control desk position (sometimes called the control officer) at the Satellite Facility in November 1999. The control desk was an open desk at which the CO sat, kept a log, answered questions, handed out supplies, and helped the floor officers as needed. Mr. Candelaria's and Mr. Cartwright's requests for the control desk position were denied uniformly because of the policy of using only female COs at the Satellite. Plaintiff Mr. Truesdale began asking for overtime assignments at the Satellite in February 2001; his requests also were denied for the same reason. All three Plaintiffs filed an EEOC Charge of Discrimination on May 10, 2001 against BCDC, alleging sex discrimination in the assignment of the control desk position at the Satellite Facility.

## **TITLE VII CLAIMS OF SEXUAL DISCRIMINATION**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) - 2(a)(1), prohibits discrimination in the workplace based upon sex. The statute prohibits overt discrimination as well as practices that appear fair in form, but that are discriminatory in operation. *Pullman-Standard v. Swint*, 456 U.S. 273, 276 (1982). This case involves overt discrimination based upon sex.

When direct evidence of sexual discrimination is present, the legal analysis under Title VII is simple. Once the plaintiffs have presented their direct evidence, the defendants have the burden of proving that the sexual classification is a bona fide occupational qualification, or BFOQ, as defined by the statute. 42 U.S.C. §2000(e)-2(e)(1). The defendants may prove the affirmative defense of

BFOQ by showing that the classification -- in this case, being female -- was an "occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. §2000(e)-2(e)(1). It is unnecessary to prove that plaintiffs have suffered an adverse employment act. The discriminatory policy itself is the adverse employment action. *See, e.g., Torres v. Wisconsin Dep't of Health & Soc. Servs.*, 859 F.2d 1523 (7th Cir. 1988).

The bona fide occupational qualification defense is an extremely narrow exception to the general prohibition of discrimination on the basis of sex. *Dothard v. Rawlinson*, 433 U.S. 321 (1977). When asserted as an affirmative defense, the BFOQ is fact specific and can rarely be established on a summary judgment motion. *See, e.g., Tharp v. Iowa Dep't of Corr.*, 68 F.3d 223, 225 (8th Cir. 1995). To prove the affirmative defense of BFOQ, the defendants must establish that: 1) the BFOQ is reasonably necessary to the essence of this particular business, *Diaz v. Pan Am. World Airways, Inc.* 442 F.2d 385 (5th Cir. 1971); and 2) the belief that this class of employees could not safely and effectively perform the essential duties of the job is supported by some factual basis or reasonable grounds, *Hardin v. Stynchcomb,* 691 F.2d 1364 (11th Cir. 1982). In prison cases involving a BFOQ defense, some courts also place the burden on the defendants to prove that because of circumstance particular to that facility, they could not rearrange the responsibilities of the job to eliminate the clash between inmate privacy and employment opportunities for the prohibited class of employees. *See, e.g., id.* at 1373-74; *Gunter v. Iowa State Men's Reformatory*, 612 F.2d 1079, 1086 (8th Cir.), *cert. denied*, 446 U.S. 966 (1980), *overruled on other grounds*, *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982); *Harden v. Dayton Human Rehab Ctr.*, 520 F. Supp. 769, 779 (S.D. Ohio 1981).

In every case involving a BFOQ affirmative defense in a correctional setting, the courts have looked to the specific facts of the particular job in question at that particular correctional setting to determine if the defendants have met their burden. For example, in the case of *Robino v. Iranon*, 145 F.3d 1109 (9th Cir. 1998), the court relied upon the extensive, detailed study conducted by a specially appointed outside task force to determine whether the policy of excluding men from certain positions was a genuine BFOQ. In that case, the facts in the study supported the affirmative defense of BFOQ.

Whether the policy of not allowing male COs to work as the control officer at the Satellite Facility is a valid BFOQ depends upon the facts surrounding this particular facility and the essence of this particular job. Summary judgment is appropriate only when the court, viewing the record in the light most favorable to the non-moving party, determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co., Inc.,* 2 F.3d 995, 996 (10th Cir. 1993) (quoting *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). In the present case, the Court finds that the exhibits attached to the pleadings demonstrate that there are disputed issues of fact which go to the very essence of the BFOQ affirmative defense. Therefore summary judgment is denied on the issue of whether the Defendant City of Albuquerque engaged in prohibited sexual discrimination under Title VII of the Civil Rights Act of 1964.[1]

### **TITLE VII CLAIMS PRIOR TO JULY 15, 2000**

All three Plaintiffs filed their EEOC charges on May 10, 2001. Mr. Candelaria and Mr. Cartwright allege that they have suffered discrimination since they first asked for an overtime

---

[1] The Title VII claim lies only against the City of Albuquerque (which runs the Albuquerque-Bernalillo County Detention Center) and not against the individual Defendants, since the EEOC charge was brought only against BCDC.

7

assignment at the Satellite Facility on November 16, 1999. The recent Supreme Court case of *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), held that discrete discriminatory acts are not actionable under Title VII if they occurred more than 300 days prior to the filing of the EEOC charge. Every request for an overtime assignment at the Satellite Facility and subsequent denial because of the Plaintiffs' sex constitutes a discrete, allegedly discriminatory act. The denials which occurred prior to July 15, 2000 are time-barred by 42 U.S.C. §2000e-5(e)(1) because Plaintiffs did not file a timely EEOC charge. Summary judgment is granted as those allegedly discriminatory acts which Mr. Candelaria or Mr. Cartwright suffered prior to July 15, 2000 and which were brought under 42 U.S.C. §2000(e), *et seq*.[2]

## 42 U.S.C. §1983 CLAIMS UNDER THE FOURTEENTH AMENDMENT

Plaintiffs also bring a civil rights claim under 42 U.S.C. §1983 for violation of their equal protection rights under the Fourteenth Amendment. They allege that the individual Defendants and the City of Albuquerque acted under color of state law to deprive them of their constitutional rights to be free from discrimination. All Defendants have moved for summary judgment on this claim as well.

"The basis of a §1983 claim may be independent of a Title VII claim even if the claims arise from the same factual allegations and even if the conduct alleged in the §1983 claim also violates Title VII." *Notari v. Denver Water Dep't*, 971 F.2d 585 (10th Cir. 1992). The facts underlying this §1983 claim arise from the same scenario as the Title VII claims - the decision to deny male COs the opportunity to work at the control desk position at the BCDC Satellite Facility. Although the equal protection clause does not include a BFOQ exception, some courts have held that causes of action

---

[2] 42 U.S.C. §1983 does not have a similar time bar.

brought under Title VII and under §1983 not only share the same elements, but they also both allow for BFOQ as an affirmative defense. *Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 n.16 (11th Cir. 1982). As stated earlier, material issues of fact surrounding the elements of the BFOQ remain in dispute; similarly, material issues of fact related to the equal protection claim also are in dispute. Therefore, summary judgment is denied on the issue of whether the Defendants violated Plaintiffs' constitutional rights under the Fourteenth Amendment.[3]

Defendants Mr. Dantis, Captain Perea and Mr. Yarmola are named in their individual capacities in this §1983 cause of action. They contend that they are entitled to the defense of qualified immunity. Qualified immunity is an affirmative defense designed to shield government officials who perform discretionary functions from individual liability under 42 U.S.C. §1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Baptiste v. J. C. Penney Co.,* 147 F.3d 1252, 1255 (10th Cir. 1998). Once the defense of qualified immunity is raised in a summary judgment motion, the plaintiff must come forward with facts sufficient to establish first, that the defendants violated a constitutional right and second, that the contours of that right were sufficiently clear so "that a reasonable official would understand that what he is doing violated that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Plaintiffs have alleged a violation of their constitutional right to equal protection in the conditions of their employment at BCDC and have come forward with facts sufficient to establish a

---

[3]Count IV of CV 01-1452 alleges a violation of the New Mexico Human Rights Act, N.M. STAT. ANN. §§ 28-1-1 to -15 (Michie 2001) (repealed effective July 1, 2006), against the City of Albuquerque. The Act also contains a BFOQ exception. *See* § 28-1-7. Accordingly, summary judgment cannot be granted on this state law claim either.

possible constitutional violation by the individual Defendants. The constitutional right to equal protection based on gender is and was established clearly at the time of the individual Defendants' alleged unlawful conduct. *Kirchberg v. Feenstra*, 450 U.S. 455 (1981) (gender based discrimination is unconstitutional absent a showing that the classification substantially furthers an important governmental interest). Plaintiffs have met their burden; the individual defendants are not entitled to the defense of qualified immunity.

Last, Defendants Mr. Yarmola and Captain Perea argue that they cannot be held liable under 42 U.S.C. §1983 because they were not policy makers for the City of Albuquerque. To establish individual liability under §1983, the Plaintiffs must show that 1) the direct actions or decisions of the named individuals, 2) acting under color of state law, 3) violated the Plaintiffs' constitutional rights. *Hafer v. Melo*, 502 U.S. 21, 27-28 (1991). The two Defendants argue that even if the policy prohibiting male COs from working at the Satellite was an unconstitutional rule, they did not make the decision to adopt that policy and therefore did not act under color of state law to deny Plaintiffs' constitutional rights. Mr. Yarmola contends that he did nothing more than make a recommendation that a particular policy be adopted. Captain Perea states that his notation on the memorandum was nothing more than an action carrying out the order of the City's policy makers.

But even these facts are disputed. In an interrogatory, Mr. Dantis replied that Mr. Yarmola was among those responsible for creating the female-only CO policy. When asked in his deposition who made the decision to allow only female COs to work at the Satellite, Major Cook testified that he does not make these kinds of decisions alone, but makes them in collaboration with Mr. Yarmola, Captain Perea and Mr. Dantis. The issue of who decided to adopt the female-only CO policy at the Satellite is contested and cannot be determined from the exhibits attached to the pleadings. Therefore

the motion for summary judgment by Defendants Mr. Yarmola and Captain Perea in their individual capacities on the §1983 claims is denied.

## 42 U.S.C. §1983 CLAIMS UNDER THE FIRST AMENDMENT

Plaintiffs also have asserted a §1983 claim alleging violations of their First Amendment rights. Plaintiffs brought these claims in both cases, as Count III in CV 00-823 and as Count II in CV 01-1452.[4] The factual allegations underlying these claims are varied but appear to center on purported retaliation by the Defendants against Plaintiffs for their speech and actions protesting changes in BCDC policies and for their union activities.

The framework for evaluating a First Amendment claim involving alleged retaliation for exercise of free speech is three-fold. First, the employees must show that their speech involved a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146-47 (1983). Second, the employees must show that their interest in this particular expression outweighs the employer's interest in efficiently performing its public service. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Last, the employees must demonstrate that their speech was a substantial or motivating factor in the employer's adverse employment action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Defendants have argued that the speech and actions in which the Plaintiffs participated did not involve matters of public concern. Whether an employee's speech addresses a matter of public concern must be determined by "the content, form, and context of a given statement." *Martinez v. City of Grants*, 927 P.2d 1045, 1051 (1996) (quoting *Connick* at 147-48). Plaintiffs stated that they

---

[4] Plaintiffs dismissed their First Amendment claims against Mr. Yarmola earlier in the proceedings.

complained to the press, staged pickets and presented petitions about staffing problems, overtime issues, and public safety concerns at BCDC. Defendants have presented evidence that tends to show that the employees' speech pertained to internal employee affairs. Whether these communications involved matters of public concern is a factual dispute that precludes summary judgment.

Similarly, the facts surrounding Plaintiffs' claim that the Defendants retaliated against them because of their union activities also are disputed. While the right to associate with a union does not require independent proof that matters of public concern were also involved, *Boddie v. City of Columbus*, 989 F.2d 745 (5th Cir. 1993), the Plaintiffs are still required to establish that their union activities were a substantial or motivating factor in the employer's adverse employment action. The affidavits and depositions filed in this case establish that a genuine, material issue of fact exists as to the motivation behind the employment decisions which impacted the Plaintiffs. Therefore, summary judgment cannot be granted on those §1983 claims that allege violations of the Plaintiffs' First Amendment rights.

## **REMEDIES UNDER THE COLLECTIVE BARGAINING AGREEMENT**

Defendants argue that the disputes underlying this lawsuit are covered by the Collective Bargaining Agreement between the Plaintiffs and BCDC. Under the Agreement, Plaintiffs are required to exhaust their administrative remedies before filing suit in federal court. Defendants argue that Plaintiffs have failed to do so and, accordingly, may not be allowed now to proceed in federal court. *See, e.g., United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987). However, Plaintiffs have presented an affidavit from Anthony Marquez, President of Local 1888, the union that represents BCDC employees, stating that "there is no clause in our contract prohibiting union members from suing in federal court to protect their constitutional rights." Defendants have not cited

12

to or otherwise presented any section of the Collective Bargaining Agreement to contradict this statement. Nor have they pointed to any language in the Agreement that would require Plaintiffs to exhaust their administrative remedies before proceeding in this forum. Therefore, this Court finds that the Collective Bargaining Agreement between the Plaintiffs and BCDC does not preclude this lawsuit.

## MOTION TO STRIKE CERTAIN EXHIBITS

Defendants have moved to strike over two dozen of Plaintiffs' exhibits that were submitted in response to these motions for summary judgment. The Motion to Strike is moot and therefore denied. The Court has not considered the particular exhibits to which Defendants object in its ruling on these motions. The depositions, affidavits of the parties, and affidavit of the identified witnesses were sufficient to establish that there are genuine issues of material fact that preclude summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment is hereby **GRANTED** only as to the Title VII claims occurring prior to July 15, 2000 because they are time-barred. The remainder of Defendants' motions for summary judgment are **DENIED** because material issues of fact remain in dispute. Defendants' motion to strike plaintiffs' exhibits is **DENIED** as moot.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:
Joseph P. Kennedy
Shannon L. Oliver

13

<u>Attorneys for Defendant</u>:
Patrick D Allen
Deborah D. Wells
Michael I. Garcia
Charles W. Kolberg
Daniel Ramczyk